**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| ANTHONY ASBRIDGE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| | ) |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, | ) |
| | ) |
| | ) |
| Defendant. | ) |

# **COMPLAINT**

COMES NOW Plaintiff, Anthony Asbridge, and for his claims and causes of action against Defendant, Lincoln National Life Insurance Company, states as follows:

## PARTIES

1. Anthony Asbridge ("Asbridge") is a resident and citizen of the State of Missouri.
2. Defendant Lincoln National Life Insurance Company ("Lincoln") is an out-of-state insurance company authorized to do business in the State of Missouri. The Commissioner of the Missouri Department of Insurance is authorized to accept service of process on behalf of Lincoln.

## JURISDICTION AND VENUE

3. Asbridge brings his claims pursuant to the Employee Retirement Income Security Act ("ERISA") and 29 U.S.C. § 1001 *et seq.*
4. This dispute is governed by a welfare benefits plan and its policy documents, as well as applicable federal law regarding employer provided benefits. 29 U.S.C. § 1132(e)(1).

5. This Court also has subject matter jurisdiction pursuant to the general jurisdictional statute for civil actions arising under federal law. 28 U.S.C. § 1331.

6. Venue lies in the Western District of Missouri under 29 U.S.C. § 1332(e)(2), as the breach occurred in this district, and because the welfare benefits plan is administered in this district.

7. Venue is also proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to this action occurred within this judicial district.

## INFORMATION REGARDING TRIAL

8. No jury trial is allowed under ERISA law.

## STATEMENTS OF FACT

9. Asbridge was employed by Papa John's International ("Papa John's") as the General Manager of one if its locations in Kansas City, Missouri. The position required a high level of mental acuity, stamina, memory, and cognition. Asbridge was responsible for overseeing the entire operational spectrum at the location, including from making pizzas to revenue and budgeting analysis.

10. In April 2020 Asbridge experienced a sudden onset of disturbing symptoms, including incapacitating headaches and fatigue. He later also noted a "floater" in his right eye.

11. On May 15, 2022, Asbridge traveled to a local urgent care center for an evaluation. The physician there instructed Asbridge to go immediately to the emergency department at St. Luke's Hospital in Kansas City, Missouri.

12. At St. Luke's, Asbridge was diagnosed with a brain tumor and scheduled for an emergency craniotomy and extraction of the tumor.

13. Asbridge subsequently underwent surgery and began an extensive routine of chemotherapy and radiation treatments.

14. Asbridge suffered from extremely debilitating side-effects from the chemotherapy and radiation treatments, including fatigue, shortness of breath, memory deficits, and "chemo brain." Some of these side-effects are permanent in nature and persist despite the cessation of chemotherapy and radiation treatments.

15. Due to his deteriorating health, Asbridge's last day of work was April 17, 2020 although he remained an employee of Papa John's for some time thereafter.

16. At the time of his disability, Asbridge had Short Term Disability ("STD") and Long Term Disability ("LTD") coverage through a group plan sponsored by Papa John's. Lincoln underwrote the STD and LTD policies which insured the Plan and also acted as the claims administrator.

17. The Plan constitutes employee welfare benefits plans as defined by 29 U.S.C. § 1002 (1).

18. The Plan offered disability benefits to qualifying Papa John's employee Plan participants.

19. At all relevant times, Asbridge has been a participant and covered person under the terms of the Plan.

20. Papa John's and Lincoln entered into an administrative services contract through which Papa John's paid Lincoln for acting as claims administrator.

21. Asbridge applied for disability benefits with Lincoln.

22. Lincoln determined that Asbridge's conditions prevented him from performing the material and substantial duties of his occupation, approved his claim for benefits, and began paying Asbridge benefits under the STD policy.

23. When the maximum benefit duration of the STD became exhausted, Lincoln converted his claim and began administering his claim and benefits under the LTD policy.

24. On or about May 12, 2022, Lincoln advised Asbridge that it had predicted that he would no longer qualify for LTD benefits after October 16, 2022 and further advised that no benefits would be payable to him beyond October 16, 2022. On May 12, 2022 Lincoln had no way of knowing what Asbridge's health condition would be on or after October 16, 2022, but it decided to cease benefits anyway.

25. On November 1, 2022 Asbridge submitted a written appeal of Lincoln's adverse determination. The appeal contained substantial evidence that Asbridge was unable to sustain full-time work in any occupation.

26. Lincoln did not decide Asbridge's appeal until February 3, 2023 – ninety-four (94) days after Asbridge's request for reconsideration. Lincoln advised Asbridge that it would not reverse its decision to stop paying LTD benefits, that he had exhausted all of his administrative remedies, and that he thereafter had a right to bring a civil action.

27. The Plan and Policy articulate the conditions under which a Plan Participant is entitled to LTD benefits, and provide that benefits are payable when a person is "disabled."

28. The LTD policy defines "disabled" or "disability" as follows:

***"Disability"** or **"Disabled"** means:*

*1. For persons other than pilots, co-pilots, and crewmembers of an aircraft:*

*i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and*

*ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.*

29. From April 17, 2022 continuing to the present time, Asbridge's conditions, which include but are not limited to cognitive dysfunction, short-term memory loss, and "brain fog," have rendered him "disabled." Since at least October 16, 2022, Asbridge's conditions prevent him from performing the material and substantial duties of any occupation, with any degree of continuity.

30. Asbridge, at all relevant times, met the terms of "Disability" or "Disabled' under the LTD policy.

31. Asbridge supplied sufficient proof that he is and has been "Disabled" under the LTD policy.

32. Asbridge has satisfied every condition under the LTD policy to qualify for benefits.

33. Asbridge has exhausted his administrative remedies.

## CAUSES OF ACTION

### COUNT I
### 29 U.S.C. § 1132(a)(1)(B) – WRONGFUL DENIAL OF BENEFITS

34. Asbridge realleges the preceding paragraphs as if fully set forth herein.

35. Asbridge is entitled to all unpaid and accrued LTD benefits, as Lincoln:

    a. Made an unfavorable decision without substantial evidence;

    b. Failed to properly consider Asbridge's medical impairments and resulting limitations;

    c. Ignored evidence supporting Asbridge's claim for disability; and

    d. Issued an unfavorable decision that was arbitrary and capricious.

36. Pursuant to 29 U.S.C. § 1132(a)(1)(b), Asbridge is entitled to an award of actual damages for losses suffered.

37. Pursuant to 29 U.S.C. § 1132(g), judgment may include compensation for a beneficiary's

attorney's fees, costs, and prejudgment interest.

38. Lincoln has not satisfied its obligation to pay Asbridge due LTD benefits.

39. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(1)(B) and 29 U.S.C. § 1132(g), Asbridge prays for judgment against Lincoln for unpaid LTD benefits, attorney's fees, costs, and prejudgment interest.

## COUNT II
## 29 U.S.C. § 1132(a)(3) – BREACH OF FIDUCIARY DUTY

40. Asbridge realleges the preceding paragraphs as if fully set forth herein.

41. Under 29 U.S.C. § 1002(21)(A), a fiduciary is one who:

> "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property or such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."

42. 29 U.S.C. § 1104(a)(1)(A) describes the fiduciary standard of care:

> "a fiduciary shall discharge her duties with respect to a plan solely in the interest of the participants and beneficiaries and – for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan."

43. Lincoln, the Plan's designated claims administrator, is a fiduciary.

44. Asbridge participated in and benefitted from the Plan as previously indicated.

45. Lincoln's claims management practices are motivated by financial incentives in its administrative services agreement with Papa John's.

46. As the payor of benefits and the entity responsible for exercising discretion in claims administration, Lincoln operates under an inherent conflict of interest.

47. A higher than marketplace quality standard, as set forth in *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 (2008) governs the actions of a fiduciary.

48. Lincoln breached its fiduciary duty in:

a. Failing to comply with its internal guidelines and claims handling procedures. Its claim handlers did not comply with documented instructions involving the administration of disability claims, including its procedures involving coverage and eligibility determinations;

b. Engaging in a structural conflict of interest by assuming the role of both claims' administrator and payor of benefits;

c. Engaging in a structural conflict of interest by referring Asbridge's claim for a clinical review to a person or persons employed by MLS National Medical Evaluation Services ("MLS") who has an ongoing business and financial relationship with Lincoln and are thereby incapable of providing independent, unbiased opinions;

d. Failing to properly consider competent medical and vocational opinion evidence, and/or failing to specifically explain why it did not agree with such evidence;

e. Failing to exercise its right to have Asbridge physically examined and instead relying on "paper reports" from consultants who never met or examined Asbridge;

f. Allowing Asbridge's claim to be reviewed by Patrick Weston, MD, a physician associated with MLS that has a history of relying on incorrect data in forming opinions on the functional capacity of claimants (*See*, e.g. *Smith v. Reliance Standard Life Insurance Company*, 2018 WL 4760490 (E.D. N.C. 2018); and

g. Other respects which may be revealed through "conflict discovery."

49. During Lincoln's administration of his claim Asbridge completed paperwork and forms supplied to him by Lincoln to ensure that federal income taxes were withheld from his benefits.

50. In January 2023 Asbridge learned that Lincoln had failed to execute the paperwork it supplied to Asbridge to withhold taxes and became liable for taxes that should have been withheld by Lincoln.

51. Lincoln's wrongful conduct has damaged Asbridge because he now has federal tax liability when he should not, and such liability has damaged his credit.

52. Lincoln denied Asbridge's claim for LTD benefits for the purpose of elevating its financial interests. In doing so, it breached its fiduciary duties.

53. Lincoln failed to discharge its duties solely in the interests of its participants and beneficiaries. It acted with both a conflict of interest and breached its fiduciary duty to both Asbridge and the Plan's participants and beneficiaries generally.

54. Lincoln's improper conduct demonstrates that ordinary relief under § 1132(a)(1)(B) is not an adequate remedy.

55. Lincoln's violations of regulations alone allow Asbridge the right to pursue any remedy under Section 502(a) of ERISA, including § 1132(a)(3). 29 C.F.R. § 2560.503-1(1)(2)(i).

56. Lincoln's violations of federal regulation also subject its decision to *de novo* review.

57. WHEREFORE, pursuant to 29 U.S.C. § 1132(a)(3), § 1109, and § 1132(a)(2), Asbridge prays for an order that Lincoln retrain its employees consistent with ERISA fiduciary obligations and federal regulations; for reformation of its services agreement with the plan administrator consistent with ERISA fiduciary obligations and federal regulations;

for an injunction preventing further unlawful acts by Lincoln in its fiduciary capacity; for an equitable accounting of benefits that Lincoln has withheld; for the disgorgement of profits enjoyed by Lincoln in withholding benefits; for restitution under a theory of surcharge; for the Court's imposition of a constructive trust; for an award of attorney fees; and for further relief as the Court deems just.

Respectfully submitted,

**BURNETTDRISKILL, Attorneys**

By: *Derrick A. Pearce*
Derrick A. Pearce, Mo. #42793
Kyle H. Sciolaro, Mo. #64568
Paul J. Taylor, Mo. #72159
103 W 26th Ave., Ste. 290
North Kansas City, MO 64116
P: 816.781.4836
F: 816.792.3634
dpearce@burnettdriskill.com
ksciolaro@burnettdriskill.com
ptaylor@burnettdriskill.com
ATTORNEYS FOR PLAINTIFF